## Catharine McNichols
### v.
## Jacob Kettner.

*Husband and Wife—Agency of Husband Respecting Wife's Property—Estoppel—Fraud—Mechanics' Lien.*

1. Where a married woman holds her husband out to the world as her agent or allows him so to act with reference to her property as to induce the belief that he acts as her agent with reference thereto, and others act upon such belief, she is estopped to deny that he acted as her agent.

2. Upon appeal from a decree, declaring a mechanic's lien against a lot on account of a cottage built thereon under a written contract executed by the owner's husband, it is *held:* That certain payments made by the defendant were of her own money; and that under all the circumstances in evidence she is estopped to deny the agency of her husband.

[Opinion filed May 18, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Gwynn Garnett, Judge, presiding.

Messrs. M. A. Rorke & Son, for appellant.

Messrs. Barnum, Rubens & Ames, for appellee.

*Per Curiam.* This is an appeal from a decree in favor of appellee declaring a mechanic's lien against a certain lot owned by appellant, and upon which appellee built a cottage under a written contract made with appellant's husband.

The petition for lien alleges that the contract was made by James McNichols, acting as agent for Catharine McNichols, which contract is as follows:

"CHICAGO, February 23, 1883.

"I, James McNichols, agree and will pay Jacob Kettner the sum of eight hundred dollars ($800) for carpenter work, including plastering, painting and glazing, for cottage 22x44 to be situated on Nixon Street, according to plan. I agree to pay three hundred dollars ($300) cash down, and five hundred dollars ($500) on or before August the 1st, 1883.

"JAMES McNICHOLS."

It appears from the evidence that James McNichols and Catharine McNichols, the appellant, went to the house of appellee and wanted to learn how much a cottage of the size they desired would cost. He told them they must give him some kind of drawing that he could figure on, and they went away, and the next morning the husband, James McNichols, came back and had marked out a sketch showing three large rooms and three bed-rooms and a pantry and a closet, and after said sketch appellee drew out the plan and gave an estimate of what the work could be done for. Appellee testifies that before the contract was signed, appellant came to him and told him she was not flush of money and "if you do not do it we never will have a roof over us; she says so long as Henry is home he earns $9 a day and we will be able to pay you $100 a month. Henry earns $9, the boy $5 and the other boy $4; so I asked her how much money she could advance; she said only $200; I told her, Mrs. McNichols, I could not lay out the plans because I am no money-lender, and I can not get that much on credit. I asked her if she could pay $300, I would try to arrange it—well she said yes, and she borrowed another $100, I believe."

Appellant does not, in her testimony, deny having the conversation above set out with appellee, but the defense is rested upon the ground that the written contract was signed by the husband, and does not purport to bind her. It appears from the evidence that the source from which the money to pay for

the building was to come, as understood by all parties, was from the earnings of the son, Henry, who was getting $9 per day for his labor.

He had furnished the money to pay for the lot and the deed was taken to the appellant, his mother, as it would appear, as a gift to her. The contract was drawn up by Kettner, and the son Henry signed James McNichols' name to it, in his, said James', presence and with his assent and by the direction of appellee; and at the time, it was said by appellee that he understood Henry was going to pay. The contract was signed at the McNichols house, which was across the street from where the cottage was built, and Mrs. McNichols was not present when it was signed. She, however, knew there was a contract, and being across the street, she saw the work going on and was repeatedly at the building during the progress of the work and testifies that appellee at one time objected to her talking to his men about the work and said he wanted nothing to do with a woman.

Appellee did not know in whom the title to the lot was when the contract was made, but it is very apparent that he supposed it was in the husband and had him sign the contract for that reason. It is also apparent that appellant knew the terms of the contract for she made all the payments that were made upon it from money given to her by her son. It is argued that she did not pay her own money and that she was only the agent for the payment of the money. With that view we can not agree. The lot was hers. It does not appear that any other person made claim to any legal interest in it. The building was a betterment to her lot, and so far as appears from this record there was no lease or contract between her son or husband and herself, and therefore the building became her absolute property as soon as it went upon her lot.

The money which her son gave her to pay upon the building must, under such circumstances, be regarded as a gift to her, as the lot was, and when she paid it out upon the contract, she paid it not as her husband's money or her son's money but as her own money, which she was expending to improve her own property ; under all the circumstances we think that

appellant is estopped to deny that her husband acted as her agent in making the contract.

She permitted him to interfere about an improvement which the evidence shows she wanted made upon her lot. She negotiated with appellee about the cost, and the amount of the installments to be paid for the work; she actually made all the payments that ever were made for the work, and so far as she paid, seems to have done so in accordance with the contract. Her husband does not seem to ·have had anything further to do about the matter than to participate in the preliminary negotiations, and to have signed the written contract.

To permit appellant now to defeat appellee from getting his pay would be to allow her to profit by this interference of her husband, which she knew of and acquiesced in, and thus commit a fraud upon appellee who in good faith built the cottage upon her lot in which she and her husband now live.

This case in this feature of it is much like the case of Anderson v. Armstead, 69 Ill. 452, and the equitable rule there laid down is applicable here. Other errors assigned, it is not necessary to discuss. The decree of the Superior Court was proper and must be affirmed.

*Decree affirmed.*